**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**
_____

DOUGLAS H. PETERSON, individually and as
parent and next friend of K.P., a minor

       Plaintiffs,

       vs.                                    1:20-cv-00898-WJ-CG

KATHYLEEN M. KUNKEL
in her official capacity as
Secretary of the State of New Mexico Department of Health,

and

MICHELLE LUJAN GRISHAM,
in her official capacity as
Governor of the State of New Mexico

       Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>
<u>**DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND**</u>
<u>**PRELIMINARY INJUNCTION EXCEPT FOR THE EQUAL PROTECTION CLAIM,**</u>
<u>**WHICH IS DENIED WITHOUT PREJUDICE**</u>

      THIS MATTER is before the Court on Plaintiffs' Motion for Temporary Restraining Order

and Preliminary Injunction, filed September 11, 2020 (**Doc. 2**), and the subsequent hearing on

September 23, 2020. Having considered the written and oral arguments of counsel as well as the

applicable law, the Court finds that Plaintiffs have not met their burden for obtaining injunctive

relief. Therefore, Plaintiffs' Motion is DENIED with the exception that Plaintiffs' request for

injunctive relief on their equal protection claim is DENIED WITHOUT PREJUDICE to Plaintiffs

seeking injunctive relief on their equal protection claim under certain circumstances as explained

in this Memorandum Opinion and Order.

## INTRODUCTION

Plaintiffs[1] Douglas H. Peterson and his daughter K.P. (collectively "Plaintiffs"), pursuant to 42 U.S.C. § 1983, bring this lawsuit against Defendants Kathleen M. Kunkel, Secretary of the State of New Mexico Department of Health,  and Michelle Lujan Grisham, Governor of the State of New Mexico (collectively "Defendants"),  alleging that Defendants, through their actions regarding the regulation of private educational institutions, with special emphasis on Secretary Kunkel's Public Health Order ("PHO") and its capacity restrictions, violated the Plaintiffs' (1) Fourteenth Amendment right to equal protection; (2) Rights under Article I's Contract Clause; (3) Fourteenth Amendment right to procedural due process; and (4) First and Fourteenth Amendment right to freedom of assembly and association. Compl. ¶ 3. Through this Motion, Plaintiffs reassert their allegations of constitutional violations and request that the Court (a) declare that the PHO's 25% capacity limitation on private schools is null and void, such that private schools may operate at 100% like childcare facilities, or 50% capacity like public schools starting September 8, 2020; or (b) enjoin Defendants and any agent deriving authority from the State of New Mexico from enforcing a capacity limitation pursuant to the PHO upon private schools that is greater than that imposed on public schools and childcare facilities. Motion at 22–23.

## PROCEDURAL BACKGROUND

### I.      COVID-19

The novel coronavirus disease ("COVID-19") has spread exponentially across the globe. Approximately six months since the first confirmed cases of COVID-19 in New Mexico, there are over 27,000 confirmed cases in the state and 857 related deaths. *See* New Mexico Department of

---

[1] Defendants highlight that no private school is a party to this lawsuit and that Plaintiff K.P is a 7th grade student. Both of these facts could justify consideration of potential standing issues, but the Court will not pass on these issues at this time.

Health ("NMDOH"), 2019 Novel Coronavirus Disease (COVID-19), https://cv.nmhealth.org/ (last visited Sept. 24, 2020). COVID-19 is a respiratory illness that spreads easily through close person-to-person contact. Although it has not yet been measured precisely, a significant portion of COVID-19 cases result in mild symptoms or no symptoms. *See* Nathan W. Furukawa et al., Evidence Supporting Transmission of Severe Acute Respiratory Syndrome Coronavirus While Presymptomatic or Asymptomatic, Emerging Infections Diseases, Vol. 26, Num. 7 (July 2020), https://wwwnc.cdc.gov/eid/article/26/7/20-1595_article (last visited September 24th, 2020). Studies show that children are less vulnerable to severe illness from COVID-19 than adults. *See* Bloomberg School of Public Health at John Hopkins University, Public Health Principles for a Phased Reopening During COVID-19: Guidance for Governors, https://www.centerforhealthsecurity.org/our-work/pubs_archive/pubs-pdfs/2020/200417-reopening-guidance-governors.pdf. As of August 26, 2020, there have been no known COVID-19 related deaths of any New Mexican under the age of nineteen. *See* NMDOH, NM COVID-19 Deaths by Age as of 8/26/20.

II. **Defendants' Response to COVID-19, The New Mexico Public Education Department's Reentry Guidelines, and the Effect on Private Schools and Plaintiffs**

On March 11, 2020, Governor Lujan Grisham issued Executive Order 2020-004 ("Executive Order") to address the spread of Covid-19. Governor Michelle Lujan Grisham, Executive Order 2020-004, https://cv.nmhealth.org/wp-content/uploads/2020/03/Executive-Order-2020-004-r.pdf (March 11, 2020). The Executive Order directs all State departments and agencies to, among other things, comply with "the directives in this Order" and any instructions given by the NMDOH. *Id.*

On or about June 20, 2020, the New Mexico Public Education Department ("NMPED") published a document providing considerations, recommendations, best practices, and minimum requirements for public and charter schools in New Mexico. *See* NMPED, New Mexico Public Education Reentry Guidance ("the Reentry Guidelines"). The Reentry Guidelines state that New Mexico will allow "[t]he state [to] assess the impact of school reentry on the rate of spread of the virus…" *Id.* at 4. Upon assessment, public and charter schools may operate in three primary reentry categories: (1) Remote, (2), Hybrid, and (3) Full Reentry. Under the Hybrid model "[t]he number of students in the building at any time is *capped by the number that can be accommodated while adhering to at least six feet of social distancing or 50% classroom capacity.*" *Id.* at 9 (emphasis added).

On August 3, 2020, and of extreme importance to Plaintiffs' Motion, the NMPED announced that the school reentry phases had changed from what was initially expressed in the Reentry Guidelines. *See* Instructional Models for Reentry: Reentry Guidance Addendum A ("Addendum A"). Addendum A adds a fourth category to the existing instructional models. This newly added category, entitled "Phase in to Hybrid," is a transitional model that bridges the Remote and Hybrid instructional models. The Phase in to Hybrid model is characterized by in-person learning for elementary school students, while keeping middle and high school students confined to remote learning. Under the Phase in to Hybrid plan, "Grades PreK–5 [and 6 if the affected school serves 6th grade students] return no sooner than Sept. 8… Grades 6–8 will return next…Grades 9–12 will return last." *Id.* Addendum A lists no return dates for middle and high school students. It notes that "return dates for grades 6–8 and 9–12 will be determined by public health officials based on health conditions." *Id.*

On July 30, 2020, Secretary Kunkel issued an updated PHO providing, in relevant part:

> Private educational institutions serving children and young adults from pre-Kindergarten through 12th Grade…shall adhere to the face covering and other requirements for in-person instruction described in [the Reentry Guidelines] published by New Mexico's Public Education Department on June 20, 2020 and as updated from time to time thereafter, and shall operate with a maximum occupancy of 25% of any enclosed indoor space, with the occupancy restriction herein to govern in the event of any discrepancy with [the Reentry Guidelines].[2]

The PHO does not mention public or charter schools.

On August 17, 2020, a local Albuquerque news station published an article on one of the area's private schools, Hope Christian School. Francesca Washington, Hope Christian School Reopens with In-Person Learning, https://www.krqe.com/news/education/hope-christian-school-reopens-with-inperson-learning/ (Aug. 17, 2020) (last visited Sept. 25, 2020). The article notes that "[w]hile Albuquerque Public Schools continue online learning, [Hope Christian] welcomed students back to the classroom on [August 17th]." *Id.* The article emphasizes, [p]rivate schools . . . are treated more like a private business." *Id.* Private schools do not have to submit a reopening plan to NMPED. Instead, private schools may generate their own plans for how to follow state guidelines. In this instance, Hope Christian complied with the PHO's 25% capacity ceiling by using its gyms, libraries, and outdoor structures to space out students. *Id.*  The Court is informed that certain other private schools in the Albuquerque area are operating with in person learning at 25% capacity but the Record in this case is not clear as to the names of those other private schools operating with some form of in person learning.

On August 28, 2020, Secretary Kunkel issued another updated Public Heath Order ("August 28th PHO"). NMDOH, Public Health Order, https://cv.nmhealth.org/wpcontent/uploads/2020/08/082820-PHO.pdf (August 28, 2020). The August 28th PHO categorizes childcare facilities as an essential business and imposes on them

---

[2] NMDOH, Public Health Order, at 7, https://cv.nmhealth.org/wpcontent/uploads/2020/07/07.30.20-PHO.pdf (July 30, 2020).

certain COVID-safe practices, including adherence to maximum group sizes, child-to-teacher ratios, and physical distancing plans. *See* NMDOH, Health and Safety Guidance for New Mexico Child Care Centers and Early Childhood Professionals, https://www.newmexicokids.org/wpcontent/uploads/child_care_health_and_safety_guidance_english.pdf. (Aug. 14, 2020).  The August 28th PHO restates verbatim the language concerning private schools.

In response to the issuance of the August 28th PHO, Julianne Puente, Head of the Albuquerque Academy, a private school in the Albuquerque area, informed students and parents via email that the school's on-campus education plan is not viable under the 25% capacity ceiling imposed by the PHO. Due to this limitation, Albuquerque Academy suspended on-campus education and as of September 25, 2020, the school only offers remote education. Ms. Puente's email also stated that in-person education would be available if Albuquerque Academy could operate at 50% capacity.

On September 1, 2020, Plaintiffs filed their Complaint. On September 3, 2020, Ryan Stewart, the Secretary of NMPED, issued a memo which states, "[s]chools and districts are eligible to return to in-person learning for *elementary students* after Labor Day if they meet the following NMPED in-person education criteria." Stewart Memo (emphasis added).  Public and charter schools must (1) be located in a county in the "green zone" on the public health map; (2) have a [NMPED] approved reentry plan; and (3) have the superintendent or charter leader sign and return an assurance to abide by safety protocols outlined in [NMPED] guidance. *Id.* The memo does not state that private schools must meet this NMPED in-person education criteria.

Also on September 3, 2020, NMPED announced that school districts and charter schools in twenty-five New Mexico counties had been cleared to begin using the Hybrid instructional

model. *See* NMPED, Schools in 25 Counties May Launch Hybrid Model on Sept. 8, https://www.newmexico.gov/2020/09/03/schools-in-25-counties-may-launch-hybrid-model-sept-8/ (Sept. 3, 2020) (last visited Sept. 25, 2020). The announcement states that the Hybrid model "is being phased in beginning [September 8th] for children in grades pre-K through five in approved districts and charters. (Sixth-graders may also return if that's the highest grade in a school.)." *Id.* "Older students will remain in remote learning for at least the near-term future no matter the status of their district or charter." *Id.* The announcement emphasizes that school districts must meet all three sections of the NMPED in-person education criteria discussed above. "Districts and charters can be in green counties but still not be ready to move to the hybrid mode if they are still finalizing their reentry plan or if their local school board or charter leaders deem a return to be unsafe." *Id.* "Schools and charters located in counties that are colored red, orange or yellow must remain closed for now to in-person learning even if they have an approved reentry plan." *Id.* The announcement ends with a quote from Secretary Stewart lauding New Mexicans for their commitment to health and safety practice and noting "[w]e must keep up that effort…on behalf of the older students still waiting for their turn[.]" *Id.* The announcement does not make any reference to private schools.

On September 4, 2020, the NMPED released a list of school districts eligible for the phased-in, Hybrid mode. *See* NMPED, School Reentry List, https://webnew.ped.state.nm.us/wp-content/uploads/2020/09/Reentry-List-9-4-20.pdf (Sept. 4, 2020). The list includes several districts in the Albuquerque area. *Id.* (showing Bernalillo, Los Lunas, and Rio Rancho districts). Although middle schools and high schools are included on the list, there is no indication that these schools would be able to offer in-person education at this time.

On September 11, 2020, Plaintiffs filed the instant Motion seeking injunctive relief.

## DISCUSSION

"[W]hen a temporary restraining order is sought on notice to the adverse party, it may be treated by the court as a motion for a preliminary injunction." 13 Moore's Federal Practice § 65.31 (2020); *see* Fed. R. Civ. P. 65. Defendants received notice of Plaintiffs' Motion and filed a response opposing it. Doc. 14 (Notice of Appearance by the Matthew L. Garcia on behalf of the Defendants); Doc. 17 (Defendants' Response). Attorney Garcia appeared at the September 23, 2020 hearing on behalf of the Defendants. Therefore, the Court shall treat Plaintiffs' request for a temporary restraining order as a request for a preliminary injunction.

District courts have discretion over whether to grant preliminary injunctions. *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 796 (10th Cir. 2019). "A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (quoting *Free the Nipple–Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019)). A moving party is entitled to injunctive relief if it can show: (1) that they are "likely to succeed on the merits;" (2) that they are "likely to suffer irreparable harm in the absence of preliminary relief;" (3) that the "balance of equities" tips in their favor; and (4) that "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

The movant "must" satisfy his or her burden for each and every one of these prerequisites. *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016). These prerequisites do not establish a balancing test—each must be satisfied independently, and the strength of one cannot compensate for the weakness of another. *See id.* at 1282 (citing *Winter*, 555 U.S. at 22).

Courts disfavor preliminary injunctions that do not merely preserve the parties' relative positions pending trial. A disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win. *Free the Nipple-Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019). The United States Court of Appeals for the Tenth Circuit has a history of requiring of movants to meet an exceptionally high standard in order to obtain a disfavored injunction. *See Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001) (holding that movants who seek to disturb the status quo must "demonstrate not only that the four requirements for a preliminary injunction are met but also that they weigh heavily and compellingly in [the movants'] favor."). However, the Tenth Circuit "jettisoned" the heavily-and-compelling requirement. Today, "the requirement that a movant requesting a disfavored injunction must make a showing that the traditional four factors weigh heavily and compellingly in [the movant's] favor is no longer the law of the circuit." *Free the Nipple-Fort Collins*, 916 F.3d at 797. Instead, the District Court must "more closely scrutinize[e]" the movants claims to ensure that a disfavored preliminary injunction is warranted. A movant must "make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1261 (10th Cir. 2005) (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 544 U.S. 973, 975–96 (10th Cir. 2004)). Here, Plaintiffs' requested injunctive relief clearly meets two out of the three disfavored categories.

First, granting a preliminary injunction would change the status quo. The status quo is "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Legacy Church, Inc. v. Kunkel*, No. CIV 20-0327 JB\SCY, 2020 WL 1905586, at *29 (D.N.M. Apr. 17, 2020) (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*,

269 F.3d 1149, 1155 (10th Cir. 2001)). A preliminary injunction would allow private schools to conduct in-person learning at a 50% capacity for 7th grade students, an action no public school had been permitted to take since mid-March. Response at 12. Moreover, lifting the 25% capacity limitation on private schools after the start of the 2020–2021 school year would change how NMPED assesses and supervises school reentry throughout the state.

Second, issuing a preliminary injunction would "in effect grant plaintiff a substantial part of the relief it would obtain after a trial on the merits." *GTE Corp. v. Williams*, 731 F.2d 676, 679 (10th Cir. 1984). The relief Plaintiffs request in this Motion is an exact overlay of relief sought in their Complaint. The Complaint's request for declaratory relief and attorney's fees are merely incidental to their request for injunctive relief. *See Legacy Church, Inc.*, at *29 (D.N.M. Apr. 17, 2020) (analyzing a similar request for injunctive relief).

Because Plaintiffs' requested preliminary injunction is a disfavored injunction, they face "a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 232 (10th Cir. 2019) (quoting *Free the Nipple-Fort Collins*, 916 F.3d at 797).

I.      **Plaintiffs Fail to Establish a Substantial Likelihood of Prevailing on the Merits**

Likelihood of success on the merits is the threshold issue; all other factors depend on the Plaintiffs satisfying this requirement. The Tenth Circuit has held that a plaintiff must establish a "substantial likelihood of success on the merits." *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001). A "substantial likelihood" is defined as "a prima facie case showing a reasonable probability that [the movant] will ultimately be entitled to the relief sought." *Continental Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 781 (10th Cir. 1964). Since Plaintiffs request a disfavored injunction, they face a heavier burden in establishing that this factor is satisfied. In order to satisfy

this factor, Plaintiffs must establish a substantial likelihood of success on the merits for at least one of their claims. Accordingly, each claim is discussed in turn.

### A.  Equal Protection Claim

Plaintiffs allege that Defendants violated the Fourteenth Amendment's Equal Protection Clause by imposing on children who attend private schools tighter restrictions on in-person education than those imposed on children who attend public or charter schools or children who are cared for in childcare facilities. Compl. ¶¶ 28–47. To prevail on an equal protection claim, a plaintiff must show that she was treated differently from others who were similarly situated. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985).

First, the argument that Defendants' different treatment of private school children and children in childcare facilities violates the Equal Protection Clause fails. Plaintiff K.P. is a 7th grade student—she is not similarly situated to a toddler being cared for at a childcare facility. *See Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 53–54 (10th Cir. 2013) ("The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike.").  Further, childcare facilities cannot be a comparator for schools because education can be provided in a virtual setting while childcare must take place in a physical setting.

Next, the Court must analyze Plaintiffs' argument that Defendants' different treatment of private school children and public school children violates the Equal Protection Clause. The first issue the Court must decide is what level of review should apply in this case. "Strict scrutiny" and "rational basis" are the two primary standards used to determine the validity of a law that is challenged as denying equal protection. *Edwards v. Valdez*, 789 F.2d 1477, 1482 (10th Cir. 1986). Courts apply strict scrutiny only in instances where the government's classification involves a

suspect class or affects a fundamental right. *Id.* Here, Plaintiffs argue this case involves a number of fundamental rights. Plaintiffs assert that the Court must apply strict scrutiny because *Wisconsin v. Yoder* recognizes a parent's fundamental "liberty…to direct the upbringing and education of children under their control." 406 U.S. 205, 232–33 (1972). Further, Plaintiffs assert that *Pierce v. Society of the Sisters or the Holy Names of Jesus and Mary* supports the application of strict scrutiny because the PHO has the effect of limiting the private education of children. 268 U.S. 510, 535 (1925) ("The fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the state to standardize its children by forcing them to accept instruction from public teachers only."). However, based on the current Record, the Court cannot find a fundamental right affected by this case. Plaintiff Peterson's liberty interest in directing the upbringing and education of K.P. has not been extinguished by the PHO's 25% capacity limitation, nor does it bar him from sending her to a private school. Currently, K.P. is attending and being instructed, albeit virtually, at Albuquerque Academy—a private school chosen by her parents. This situation is markedly different than the facts found in *Yoder* and *Pierce*. Under these circumstances, the Court will not review Defendants' actions under strict scrutiny.

Alternatively, Plaintiffs argue that the centrality of education in this case triggers a heightened form of scrutiny more stringent than rational basis but not rising to the level of strict scrutiny. They cite *Plyler v. Doe* to support their request. 457 U.S. 202, 224 (1982) (suggesting that statutes limiting access to education must "further[] some substantial goal of the State"). However, unlike the PHO in this case, the state action in *Plyler* involved the discrete, "disfavored" group of undocumented children being denied free public education. *Id.* at 205 (describing the Texas statute at issue). The plaintiffs in *Plyler* challenged amendments to the Texas Education Code that withheld state funds for the education of children not legally admitted to the United

States and "authorized local school districts to deny enrollment in their public schools" to such children. *Id.* Here, Plaintiffs claim no similar kind of class membership nor any such injury.

Since no form of heightened scrutiny is warranted, the Court will apply rational basis review to Plaintiffs' equal protection claim. A law will be upheld under rational basis as long as it is rationally related to any legitimate government purpose. *City of Cleburne*, 473 U.S. at 440. Under this level of review, a law "must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for" it. *Petrella v. Brownback*, 787 F.3d 1242, 1266 (10th Cir. 2015) (citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, (1993)). "Under a rational basis review, the party challenging a classification under the Equal Protection Clause normally has the burden to negate 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Swepi, Ltd. P'ship v. Mora Cty.*, 81 F. Supp. 3d 1075, 1181 (D.N.M. 2015) (quoting *Bd. of Trustees v. Garrett*, 531 U.S. 356, 367 (2001)).

Plaintiffs do not argue that the state lacked a legitimate purpose when it enacted the PHO. *See* Motion at 17 ("Public health, in light of the COVID-19 pandemic, is a significant government interest."). Instead, Plaintiffs argue that the PHO's differentiation of private schools is arbitrary and irrational. Such an argument might succeed if it could be shown that Defendants relied "on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne*, 473 U.S. at 446–47.

However, the Court need not delve further into this "arbitrary and irrational" analysis because the Record clearly shows that private school children at this time, including Plaintiff K.P., are not necessarily being burdened by the PHO, a core component of an equal protection claim. *See Zia Shadows, LLC v. City of Las Cruces*, 829 F.3d 1232, 1239 (10th Cir. 2016) ("Equal protection jurisprudence has traditionally been concerned with governmental action that

- 13 -

disproportionately burden certain classes of citizens."); *Griego v. City of Albuquerque*, 100 F.Supp.3d 1192, 1222 (D.N.M. 2015) ("Generally, to state a claim under § 1983 for violation of the Equal Protection Clause, the plaintiff must show the defendant acted under color of law and discriminated against him or her…"). Currently private schools have the ability to operate without many of the restrictions imposed on public and charter schools throughout the state. Under the current reopening regime, Defendants are not requiring private schools to meet the NMPED's in-person education criteria, nor do they place Addendum A's grade level limitations on private schools. *See* Stewart Memo (listing the reentry criteria for public and charter schools); *compare* Addendum A (limiting public and charter schools to online education for grades 6–12) *with* August 28th PHO (allowing private schools to offer in-person education for all grade levels). Although private schools are limited to a 25% capacity ceiling and subject to the safety measures in the Reentry Guidelines, these limitations do not necessarily bar private schools from offering in-person education to 100% of their student body. Hope Christian School, whose reopening is described above, is one such example of private schools creatively spacing out students in order to comply with the 25% capacity limitation. Right now, these creative social distancing solutions are unavailable to public and charter schools that serve grades 6–12 or that fail to satisfy NMPED's in-person education criteria. Thus, public and charter schools are automatically limited to remote education under the current regulations.

Plaintiffs' request that K.P., a 7th grade student at a private school, be given the same opportunity for in-person learning as her public or charter school counterparts. The Court cannot currently grant this relief because in-person learning at 50% capacity is available only to elementary school students. K.P.'s school, Albuquerque Academy, could offer her in-person education under the PHO if the school chose to operate within the 25% capacity limitation like

- 14 -

some private schools have chosen to do.  K.P.'s school would not have this option if it were a public or charter school. In essence, Plaintiffs are not seeking the standard for public and charter schools be applied equally to K.P. and her private school. Instead, Plaintiffs seek favorable treatment, a request that runs counter to the Equal Protection Clause. *See Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) ("Equal protection is essentially a direction that all persons similarly situated should be treated *alike*.") (emphasis added)).

Under the current circumstances, Plaintiffs fail to establish a substantial likelihood of prevailing on the merits of their equal protection claim because the Defendants are treating them more favorably than students attending public and charter schools. However, the Court emphasizes that if grades 7–12 in public and charter schools begin in-person education under the Hybrid model, then Plaintiff K.P. may have a viable equal protection claim that could entitle her to injunctive relief if the 25% capacity limitation is still enforced against private schools.  Therefore, Plaintiffs' request for injunctive relief under their equal protection claim is denied without prejudice.  In the event Defendants allow public and charter schools to begin in-person instruction for grades 7–12 under the Hybrid model or other model that allows in-person instruction at a capacity level greater than 25%, Plaintiffs may return to seek relief from the Court.  Even applying a rational basis level of scrutiny, the Court has difficulty understanding how Defendants' regulatory plan could survive a scenario whereby private schools remain limited to in-person instruction at 25% capacity while public and charter schools are allowed to move to in-person instruction at 50% capacity or some capacity level greater than the capacity level set for private schools.

### B.  Contracts Clause Claim

Plaintiffs allege that Defendants violated the Contract Clause by depriving Plaintiff Douglas H. Peterson of a substantial benefit of his contract with Albuquerque Academy. Compl.

¶¶ 48–59. The Contracts Clause of the United States Constitution provides, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts[.]" U.S. Const. art. I, § 10. "[T]he Contract Clause limits the power of the States to modify their own contracts as well as to regulate those between private parties." *U.S. Tr. Co. of N.Y. v. New Jersey*, 431 U.S. 1, 17 (1977). However, the Contracts Clause "is not an absolute one and is not to be read with literal exactness like a mathematical formula." *Home Bldg. & Loan Assoc. v. Blaisdell*, 290 U.S. 398, 428 (1934). Nor does the clause "operate to obliterate the police power of the States." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978).

A two-step test determines whether a state law violates the Contracts Clause. "The threshold issue is whether the state law has 'operated as a substantial impairment of a contractual relationship.'" *Sveen v. Melin*, 138 S. Ct. 1815, 1821–1822, (2018) (quoting *Allied*, 438 U.S. at 244). "In answering that question, the Court has considered the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Id.* at 1822. "Minimal alteration of contractual obligations may end the inquiry at its first stage." *Allied*, 438 U.S. at 245.

Here, Plaintiff Peterson cannot show substantial impairment of his contractual relationship with Albuquerque Academy because the PHO does not require Albuquerque Academy to cease in-person education. Moreover, the PHO does not interfere with Mr. Peterson's reasonable expectations because he entered into the contract at issue on March 22, 2020, more than a week after the Governor declared a state of emergency and during a time when Albuquerque Academy had already ceased in-person learning. *See* Compl. ¶ 11; ¶50. Thus, Plaintiffs fail to demonstrate a substantial likelihood of success on their Contracts Clause claim.

### C.  Procedural Due Process Claim

Plaintiffs allege that Defendants violated the Fourteenth Amendment by depriving Plaintiff Peterson of his liberty to send his child to private school and Plaintiff K.P's liberty to attend private school by unduly restricting private school attendance without due process of law. Compl. ¶¶ 60–68. The Fourteenth Amendment provides that "No State…shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiffs complain that Defendants issued the PHO "without legal justification" and "issued the restriction with no right to a hearing or opportunity to participate in an appeal process." Compl. ¶¶ 64–66. Such complaints do not give rise to a procedural due process violation because the underlying governmental action affects a general class of persons. *See Okla. Educ. Ass'n v. Alcoholic Beverage Laws Enf't Comm'n*, 889 F.2d 929, 936 (10th Cir. 1989) ("When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process."). Although this exception typically applies to laws passed by Congress or state legislatures, courts have held that the exception generally applies regardless of the entity and instead focus on whether the action applies to a larger segment of the population rather than a limited number of individuals. *See, e.g., Curlott v. Campbell*, 598 F.2d 1175, 1181 (9th Cir. 1979) ("At the outset we doubt very much that procedural due process prior to reduction of benefits is required when an agency makes a broadly applicable, legislative-type decision." (citing *Bi-Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441 (1915)). According to Plaintiffs' Complaint, "there are approximately one hundred seventy . . . non-public schools in New Mexico, serving 22,230 students as of 2015." Compl. ¶ 16. These statistics reveal a general population that was affected by the PHO, rather than a distinct group. Thus, Plaintiffs fail to demonstrate a substantial likelihood of success on the merits for their due process claim.

### D.  Freedom of Assembly and Association Claim

Plaintiffs allege that Defendants violated the First and Fourteenth Amendments by not narrowly tailoring the challenged restrictions on Plaintiff K.P.'s right to peacefully assemble and associate and Plaintiff Peterson's right to send his child to a private school. Compl. ¶¶ 69–82. Both "the Supreme Court and the Tenth Circuit have conflated and rephrased associational and assembly rights as the 'freedom to expressive association.'" *Legacy Church, Inc.*, 2020 U.S. Dist. LEXIS 122542, at *294 (quoting *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 658 (10th Cir. 2006). Accordingly, the Tenth Circuit has treated claimed violations of freedom to associate and assemble as a single claim to be analyzed as a claim to freedom of expressive association. *Id.* at *220. "Expressive association is the 'right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.'" *Id.* at *221 (quoting *Schalk v. Gallemore*, 906 F.2d 491, 498 (10th Cir. 1990)). "Expressive association is not, however, an absolute right, because 'there may be countervailing principles that prevail over the right of association.'" *Id.* at *222 (quoting *Grace United Methodist Church*, 451 F.3d at 658).

In evaluating Plaintiffs' expressive association claim, the initial inquiry is whether the group engages in expressive association. *See A.M. v. N.M. Dep't of Health*, 117 F. Supp. 3d 1220, 1258 (D.N.M. 2015). A group claiming protection "must engage in some form of expression." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). In this case, Plaintiffs allege that K.P. is deprived from associating with other private school children for the purpose of obtaining an education. Compl. ¶ 72. While education is undoubtedly important, physically assembling for the purpose of attending school does not inherently implicate expressive conduct or association. Rather, Plaintiffs asserted claim seems to indicate "a generalized right of social association," which the Supreme

Court has held finds no protection under the First Amendment. *See City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989); *see also Coleman v. Utah State Charter Sch. Bd.*, 2011 WL 4527421 at *4 (D. Utah Sep. 28, 2011) (holding that a charter school director's allegations that the defendants "actions infringed on her ability to generally associate with Monticello students, teachers, administrators, and other parents" was akin to a "generalized right of social association").

Moreover, the PHO does not prevent K.P from associating with her classmates—she may continue to associate and assemble with them virtually or at another location. Accordingly, Plaintiffs fail to demonstrate a substantial likelihood of success on the merits for their freedom of association and assembly claim.

## II.   Plaintiffs Fail to show Irreparable Harm Unless the Injunction is Issued

Even assuming Plaintiffs had succeeded on showing a likelihood of success on the merits, they would still need to satisfy the remaining factors in order to receive injunctive relief. Plaintiffs must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Plaintiffs allege that they will suffer irreparable harm in the absence of an injunction because as each day goes by Plaintiff K.P. is losing the social medical benefits of in-person education and Plaintiff Peterson is losing the benefits of his contract with Albuquerque Academy. Motion at 21.

What makes an injury "irreparable" is the inadequacy of, and the difficulty of calculating, a monetary remedy after a full trial. Any deprivation of any constitutional right fits that bill. *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 806 (10th Cir. 2019). However, the Tenth Circuit has yet to clearly articulate whether the movant satisfies this factor by merely alleging a constitutional violation or whether the movant must actually demonstrate a likely constitutional violation. *Compare O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*,

342 F.3d 1170, 1187 (10th Cir. 2003)("Because 'a plaintiff satisfies the irreparable harm analysis by alleging a violation of RFRA,' we conclude the irreparable harm requirement for a preliminary injunction is satisfied.") *with Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1146 (10th Cir. 2013) (characterizing circuit precedent as holding "that establishing a likely RFRA violation satisfies the irreparable harm factor"). Defendants also cite to an opinion out of the Second Circuit which suggests that an allegation of constitutional violation is enough. *See Ass'n of Jewish Camp Ops. v. Cuomo*, ___ F. Supp. 3d. ___, 1:20-CV-0687 (GTS/DJS), 2020 WL 3766496, *19 (N.D.N.Y. July 6, 2020) (noting "it is the alleged violation of a constitutional right that triggers a finding of irreparable harm"). The detailed discussion in the previous section of this Memorandum Order and Opinion reveals that, under these circumstances, Plaintiffs' allegations of constitutional violations are not strong enough to succeed on the merits.

Plaintiffs allege that money damages cannot solve their injuries and that injunctive relief is their only remedy. Motion at 21. The Court takes issue with Plaintiffs' assertion that money damages will not remedy the contract issue in this case. It is "well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005). Plaintiff Peterson retains the right to bring a contract claim—although not against current Defendants under these facts—and may recover appropriate damages through such an action. At this time, Plaintiffs cannot make a threshold showing that they will suffer irreparable harm unless the injunction is issued.

### III.   Plaintiffs Fail to show that their Threatened Injury Outweighs the Harm that the Preliminary Injunction may cause the Defendants and that the Injunction would not be Adverse to Public Interest.

Plaintiffs argue that their threatened injury outweighs any harm the injunction would cause Defendants because public and charter schools are safely operating at 50% capacity. Motion at

21–22. As discussed above, such factual allegations do not accurately describe the current state of school regulations and reopening plans. Plaintiffs gamble with their request for relief from this Court. Paradoxically, were the Court to enjoin the Defendants from regulating private schools under different criteria, Defendants might simply choose to regulate both private and public schools under the terms of Addendum A. Such a choice that would take away private schools' ability to offer in-person education for grades 7–12 and make it *less* likely that Albuquerque Academy would open its campus to students. Accordingly, the Court finds that Plaintiffs have not shown that their threatened injury outweighs the harm that the injunction may cause the Defendants.

Plaintiffs also argue that the injunction would benefit the public interest because families and students have a strong interest in ensuring access to "meaningful" education. Motion at 22. Plaintiffs do not further articulate how the public would be served by their request, nor do they sufficiently address the safety concerns proffered by the Defendants. Accordingly, the Court finds that Plaintiffs have failed to show that the injunction would not adversely affect the public interest.

**CONCLUSION**

A preliminary injunction of the type requested by Plaintiffs is an extraordinary remedy, and to obtain one Plaintiffs must show a substantial likelihood of prevailing on the merits; irreparable harm unless the injunction is issued; that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and that the injunction, if issued, will not adversely affect the public interest. Plaintiffs have not met their burden in establishing any of these factors. However, Plaintiffs may renew their equal protection claim if Defendants leave private schools restricted to in-person instruction at 25% capacity while allowing public and charter schools to offer in-person instruction for grades 7–12 at a higher capacity level.

**THEREFORE, IT IS ORDERED** that Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (**Doc. 2**) is hereby **DENIED, with the exception that the request for injunctive relief under Plaintiffs' Equal Protection claim is DENIED WITHOUT PREJUDICE,** for the reasons described in this Memorandum Opinion and Order**.**

_____

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE